UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY T. LEAR,

                            Petitioner,            **No. 06-CV-0750(RJA)(VEB)**

        -vs-                                        **REPORT AND RECOMMENDATION**

THOMAS POOLE, Superintendent,
Five Points Correctional Facility,

                            Respondent.
_____

## I.      Introduction

*Pro se* petitioner Gary T. Lear ("Lear" or "petitioner") has filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his custody,

following a conviction by guilty plea in Niagara County Court. (Docket #1). Subsequent to

respondent filing his answer, Lear subsequently filed a motion to the amend the petition (Docket

#12), which is presently pending. Respondent answered the petition (Docket #4, #5) but has not

filed any papers in response to the motion to amend.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1).

(Docket #11). For the reasons that follow, the Court recommends finding that none of the claims

asserted by Lear in the Petition or the Proposed Amended Petition warrant habeas relief.

Accordingly, the Court recommends denial, with prejudice, of both the Petition and the Motion

to Amend.

## II.     Factual Background and Procedural History

In 2003, Lear pled guilty in Niagara County Court to one count of attempted course of

sexual conduct against a child ("course of sexual conduct") in the first degree (N.Y. Penal Law §§ 110.00 (attempt), former 130.75(1)(a), a class C violent felony), and one count of sexual abuse in the first degree (N.Y. Penal Law § 130.60(2), a class A misdemeanor). The guilty plea was in satisfaction of an indictment charging Lear with one count of first degree "course of sexual conduct", one count of endangering the welfare of a child, and one count of second degree "course of sexual conduct". The prosecution accepted the plea in full satisfaction of the indictment, and in return, dismissed a pending, unrelated grand larceny charge. The prosecutor agreed not to pursue potential sexual offense charges against Lear which involving two different female victims. At the time of the plea, the prosecutor did not take a position with respect to sentencing.

Six weeks later, at the sentencing hearing, petitioner moved to withdraw his guilty plea, alleging that "if I knew what some of these charges were, I would have never took [sic] the plea I took." The trial court denied the motion to withdraw without a hearing.

Because Lear had a prior felony conviction on a sexual offense charge involving another young female victim, the trial court certified petitioner as a sexually violent predator and sentenced him to a determinate term of 15 years in prison on the "course of sexual conduct" charge, to be served concurrently with a one-year sentence on the misdemeanor. In addition, the court imposed a post-release supervision period of five years.

On direct appeal, Lear raised two claims: (1) that his plea was involuntary because the trial court failed to make a sufficient inquiry into the effect of his medication on his mental state; and (2) that his sentence was harsh and excessive. The Appellate Division, Fourth Department of New York State Supreme Court, unanimously affirmed his conviction in a memorandum.

decision and order. *People v. Lear*, 19 A.D.3d 1002, 1002-03 (App. Div. 4th Dept. 2003) (citations omitted). The New York Court of Appeals denied leave to appeal.

Lear subsequently filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 in the trial court, raising the grounds of grand jury evidence and indictment insufficiencies, the trial court erred in not finding petitioner to be incompetent to plead guilty, ineffective assistance of counsel, and his guilty plea was not knowingly and intelligently entered where he did not have the benefit of a hearing for the purpose of disproving certain allegations against him. The trial court denied the motion after reviewing the merits, and leave to appeal was denied.

### III.    General Legal Principles Applicable to Habeas Petitions

The federal habeas statute provides for habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty." 28 U.S.C. § 2254(a); *accord Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). As the Supreme Court has explained many times, "Federal habeas corpus relief does not lie for errors of state law." *Id.* (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law)); *accord*, *e.g.*, *Ponnapula v. Spitzer*, 297 F.3d 172, 181 (2d. Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States.") (citations omitted).

Under the 1996 amendments to federal habeas statute imposed by the Anti-Terrorism and

Effective Death Penalty Act, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000). In other words, where the state court has "adjudicated the merits" of a petitioner's federal constitutional claim, habeas relief may not be granted unless the state court's ruling: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and requires that to the extent a habeas petitioner disputes such factual findings, the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A motion to amend a petition for a writ of habeas corpus is generally governed by Federal Rule of Civil Procedure 15(a). *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 2569 (2005); *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001); *see also* Rule 11 of the Rules Governing Section 2254 Cases ("the Section 2254 Rules") ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."). Because respondent has already served his answer, Lear requires permission of the Court to amend his habeas petition. *Mayle*, 545 U.S. 644 ("Before a

responsive pleading is served, pleadings may be amended once as a 'matter of course,' i.e., without seeking court leave.") (quoting FED. R. CIV. P. 15(a)).

In general, "shall be freely given when justice so requires," FED. R. CIV. P. 15(a), and a *pro se* litigant in particular "should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Dluhos v. Floating & Abandoned Vessel known as "New York"*, 162 F.3d 63, 69-70 (2d Cir.1998) (quotation omitted). Nevertheless, a motion to amend warrants denial where there is an "apparent or declared reason [for doing so]–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'" *Dluhos*, 162 F.3d at 69 (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962) ((interpreting FED. R. CIV. P. 15(a) and citing *Hemphill v. Schott*, 141 F.3d 412, 420 (2d Cir.1998)); *accord, e.g.*, *Warren v. Woods*, No. 05 Civ. 8438(CM)(KNF), 2008 WL 243787, at *2 (S.D.N.Y. Jan. 29, 2008) (denying motion to amend § 2254 habeas petition) (citing, *inter alia*, *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Although FED. R. CIV. P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied.")); *Hall v. Griener*, 2004 WL 350759, *2 (S.D.N.Y. Feb. 24, 2004) (§ 2254 habeas case; noting that "[u]nder Rule 15, leave to amend may be denied 'if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile.").

**IV.   Analysis of the Claims Raised in the Habeas Petition and Proposed Amended Petition**

      **A.   Harshness and excessiveness of the sentence (Claim One, Petition ¶22(A))**

Lear's first claim for habeas relief is that his sentence was harsh and excessive and represents an abuse of discretion. However, a petitioner's assertion that the judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). As the Second Circuit has explained, "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.1989)).

Upon Lear's plea of guilty to a class C violent felony, the trial court certified him as a sexually violent predator and imposed concurrent sentences for his two convictions. The longest of the sentences was 15 years in prison, followed by five years of post-release supervision. *See* N.Y. CRIM. PROC. LAW §§ 70.06(6) (a determinate sentence for a class C violent felony is a minimum of five years and a maximum of 15 years, with a term of post-release supervision of between two and one-half to five years); 70.45(2). Although Lear's sentence was the maximum permitted by statute, it did not exceed what was permissible under New York's sentencing scheme. Accordingly, Lear's claim that the trial judge abused his discretion in imposing an allegedly harsh and excessive sentence should be dismissed because it fails to present a federal constitutional issue cognizable on habeas review. *See, e.g., White*, 969 F.2d at 1383 (holding that

a state habeas petitioner who was sentenced within the limits of the state law did not present a federal constitutional issue for § 2254 habeas purposes).

**B.      Claims Relating to Petitioner's Guilty Plea (Claims Two, Five and Seven, Petition ¶¶22(B), 22(E), 22(G))**

Lear contended on direct appeal that he did not have the mental competence to voluntarily and knowingly waive his constitutional rights when he entered his guilty plea because he the medications he was taking for high blood pressure and "nerves" had "stripped him of orientation or cognition."  He argued that the trial court failed to make even a minimal inquiry of petitioner's mental state. Because the trial court failed to sufficiently assure itself of petitioner's competency, petitioner argues, his plea could not be knowing, intelligent or voluntary.  These allegations, which are collectively contained in claim two of the habeas petition, were presented to, and rejected by, the Appellate Division on direct appeal:

> At the time of sentencing, defendant moved to withdraw his plea on the sole ground that he was not fully informed of the charges against him. Thus, defendant failed to preserve for our review his current contention that the plea was involuntary because County Court failed to make a sufficient inquiry into the effect of his medication on his mental state. Were we to reach the merits of that contention as a matter of discretion in the interest of justice, we would conclude that, "[b]ecause the record demonstrates that defendant had a rational and factual understanding of the proceedings, [the court] did not err in failing to make a further inquiry of the effect of the medication on defendant's mental condition[.]"

*People v. Lear*, 19 A.D.3d at 1002-03 (citations omitted).

Relatedly, Lear argues that the trial court erroneously failed to make an explicit finding on the record that petitioner in fact was mentally competent to stand trial (claim 5). This issue was raised in Lear's subsequent C.P.L. § 440.10 motion and rejected on the merits by the trial court. *See* Niagara County Court Order Denying C.P.L § 440.10 Motion to Vacate Conviction dated

Sept. 21, 2006.

To the extent that there may exist a procedural bar to Lear's claims concerning his competency and the voluntariness of his guilty plea as a result of the "adequate and independent state ground" doctrine, *Coleman v. Thompson,* 501 U.S. 722, 729(1991), I note that respondent has not asserted this as an affirmative defense and has therefore waived it, *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). Rather, respondent has addressed all of Lear's claims on the merits. Furthermore, there is no need to resolve the issue of whether there exists an "adjudication on the merits" of these claims to which AEDPA's standard of deference applies since, as discussed below, the claims do not warrant habeas relief even under the more lenient *de novo* standard of review.

It is well-settled that the "criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453 (1992). This "prohibition is fundamental to an adversary system of justice." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). "A criminal defendant may not be tried unless he is competent and he may not . . . . plead guilty unless he does so 'competently and intelligently'." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). "For the plea to be voluntary, '[i]t is axiomatic' that the defendant must at least be competent to proceed." *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (quoting *United States v. Masthers*, 539 F.2d 721, 725 (D.C. Cir. 1976)).

The federal standard for determining competency to stand trial is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402

(1960) (*per curiam*)). This federal standard for determining competency to stand trial is the same standard applied by the Appellate Division in reviewing the record Lear's case on appeal. "When a guilty plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination." *Oyague v. Artuz*, 393 F.3d at 106 (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Thus, a guilty plea is valid only if the record demonstrates that it is voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. at 242-43. "[A]lthough 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings.'" *Parke v. Raley*, 506 U.S. 20, 35 (1992) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) (internal citation omitted)). Statements made by a defendant at a plea hearing constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

At the plea hearing, petitioner testified to where he lived, for how long, detailed his educational background and said he understood the nature of the charges to which he was pleading guilty. Lear indicated he had, early that morning, taken unidentified medications for high blood pressure and "nerves"—medicines that he claimed sometimes affected his ability to think clearly. This prompted the trial court to inquire further into petitioner's mental state. Petitioner

explained who prescribed the drugs, and when and where they were administered. He discussed his psychiatric treatment history, which included two psychiatric examinations prior to the indictment being filed, both of which declared petitioner to be mentally competent. The trial court had the benefit of previously reviewing these reports. Although Lear indicated that he was nervous and tired, he declared that he nevertheless was in good mental and physical condition. As respondent points out, Lear's "defense counsel, 'who was in the best position to assess defendant's capacity,' did not raise the issue of defendant's fitness to proceed or request an examination pursuant to [N.Y. Crim. Proc. Law] § 730.30(2)." *People v. Carbonel*, 296 A.D.2d 858, 858, 745 N.Y.S.2d 367, 368 (App. Div. 4th Dept. 2002) (quoting *People v. Gelikkaya*, 84 N.Y.2d 456, 459 (N.Y. 1994)).

Petitioner confirmed that he had fully discussed his case and the guilty plea with defense counsel and was satisfied with the legal representation that counsel had provided. Lear affirmed that he understood what was occurring in court that day and was prepared to proceed. Upon being questioned by the trial judge, Lear confirmed that he understood all of the constitutional rights he was giving up by pleading guilty and forgoing a trial on the indictment. Petitioner affirmed that he had not been forced, threatened, or coerced into entering the guilty plea, and he was freely and voluntarily pleading guilty. Lear then detailed how he committed the crimes by touching the first complainant's vagina, bare and clothed, with his penis on four or five occasions; and by touching the second complainant's clothed vagina "a couple times."

After considering the matter with his lawyer, Lear also waived his right to appeal. Lear confirmed that he had not been made any sentence promises in exchange for his guilty plea, and that he understood that the trial court would make the ultimate determination as to the length of

his sentence. Lear understood that his potential sentencing exposure was up to 15 years in prison followed by five years of post-release supervision.

At the sentencing hearing six weeks later, however, Lear claimed for the first time a lack of understanding of the offenses to which he had pled guilty, stating he did not know "what some of these charges were." He asked the trial court for permission to withdraw his guilty plea. This request was denied, and Lear was sentenced. When Lear raised the competency issue again in his C.P.L. § 440.10 motion, the trial court held, "[t]here is in the record of the proceedings not the slightest indication that defendant was uninformed, confused or incompetent when he entered his plea of when he was sentenced."

This Court agrees with respondent that Lear's in-court, under-oath statements made by petitioner and summarized above completely undermine his contention that he was too disoriented to understood what occurred at the plea hearing. The plea transcript also contradicts Lear's assertion that the trial court failed to make "even a minimal" inquiry as to his mental state and competency to plead guilty. To the contrary, upon hearing that Lear was taking medications for his "nerves" and felt "tired", the trial court did question Lear about the effects of his medications on his mental state that day. In sum, the record does not support Lear's belated and unsubstantiated assertions that his plea was not voluntary, knowing, and intelligent because he was mentally incapable of comprehending the plea proceeding. Furthermore, they are contrary to petitioner's express, sworn representations during the plea colloquy.

The record amply supports a conclusion that Lear, at the time he entered his guilty plea, had "a rational as well as factual understanding of the proceedings against him," *Godinez v. Moran*, 509 U.S. at 396. The trial court thus did not violate Lear's due process rights by failing to

inquire, beyond what it did at the hearing, into the effect of the medication on his mental condition. Nor was the trial court constitutionally required to make a specific finding, before accepting the guilty plea, that Lear was competent. In any event, Lear's competency is demonstrable on the record, and the trial court's agreement with that finding is implicit from the record. For the foregoing reasons, this Court cannot find that Lear's due process rights were violated. Accordingly, the Court recommends denying habeas relief on Lear's claims pertaining to his mental competency and the voluntariness of his guilty plea.

### C. Claims Pertaining to the Indictment (Claims Three and Four, Petition ¶¶22(C), 22(D); Claims in Proposed Amended Petition)

In claim three of his habeas petition, Lear contends that the indictment against him was defective and duplicitous because it "alleg[ed] two or more offenses in one count" and therefore violated N.Y. CRIM. PROC. LAW § 200.30(1) ("Each count of an indictment may charge one offense only."). Lear also argues in claim four of the petition, that the "indictment and information was [sic] legally insufficient and defective to present to the grand jury on its face in violation of [N.Y. CRIM. PROC. LAW ] § 190.00 . . . [the] New York Constitution Art. 1, § 6, and the U.S. Constitution 14th Amendment." In Lear's motion to amend the petition, he states that his proposed amended claims are "only addressing the [i]ndictment & variance issue [sic]." Petitioner's Proposed Amended Petition at 2, ¶¶5 *et seq.* (Docket No. 12-3). His new argument is that the indictment also was defective because "[t]he People shortened the time span to meet the statutory requirements of the charges"; he states that "numerous New York state caselaws [sic] and statutes support that the People cannot alter the time span to meet the statute, nor to inhibit the defendant from a proper defense, alleging a per-se unreasonable time span." Proposed

Amended Petition at 2-3 (Docket No. 12-3) (citing, *inter alia*, *People v. Sedlock*, 8 N.Y.3d 535, 538-39 (N.Y. 2007)). Thus, Lear is arguing that the indictment failed to provide him with sufficient notice of the accusations against him so as enable him to prepare a defense. *See id.* (citing *Rosen v. United States*, 161 U.S. 29, 34 (1896) ("[T]he indictment shall apprise [defendant] of the crime charged with such reasonable certainty that he can make his defense and protect himself after judgment against another prosecution for the same offense.")).

Lear's claims attacking the indictment and the presentation of his case to the grand jury, do not warrant habeas relief given his constitutionally valid guilty plea. As the Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258 (1973),

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

411 U.S. at 267 (noting that the defendant may nonetheless "attack the voluntary and intelligent character of the guilty plea"); *accord United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (*per curiam*) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.")); *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."). [1]

---

[1]    Furthermore, Lear's primary authority cited in the amended petition is a New York state case, *People v. Sedlock*, 8 N.Y.3d at 538-39, which was resolved on New York state law rather than state or federal constitutional grounds. It is well settled that only errors of federal constitutional magnitude warrant habeas relief. An evidentiary rule, such as the adequacy of a bill of particulars, is a question of state law and not cognizable in a habeas proceeding. *Green v. Behrle*, No. 05CV810, 2008 WL 4826321, *5 (W.D.N.Y. Nov. 4, 2008) (Scott, MJ) (citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)). In *Green*, Magistrate Judge Scott rejected the habeas

### D. Claims Pertaining to Trial Counsel's Performance (Claim Six, Petition ¶22(F))

The standard applicable to claims of ineffective assistance of counsel is the familiar two-part framework described by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show that his attorney's performance "fell below an objective standard of reasonableness," and second, he must show that he was prejudiced by counsel's deficient representation.

Lear claims that had trial counsel sought a dismissal based on the indictment, as particularized by the bill of particulars, the charges against him would have been dismissed in their entirety. These claims, which regard events occurring prior to his guilty plea, are not cognizable on habeas review. *Schwartz v. Connell,* No. 05 Civ. 10305(RPP), 2006 WL 3549660, at *4 (S.D.N.Y. Dec. 6, 2006) ("The rule that a defendant who 'knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings[,]' *Lebowitz v. United States*., 877 F.2d 207, 209 (2d Cir. 1989), also applies to ineffective assistance of counsel claims

---

petitioner's claim that there was no meaningful bill of particulars served with regard to the charge of N.Y. PENAL LAW § 130.80(1)(a) outlawing a course of sexual conduct against a child when, "over a period of time not less than three months in duration," the defendant engaged in two or more acts of sexual conduct with a child less than eleven years old. In that case, the indictment against Green spanned between January 1, 1999, and November 30, 2001. As here, the petitioner in *Green* relied upon *People v. Sedlock*, 8 N.Y.3d at 538-39, in which the prosecution charged Sedlock with a non-continuous course of conduct (forcibly touching) the sexual or intimate parts of another person over a seven-month period, and the defense motion for a bill of particulars was denied. The Court of Appeals held "that the People failed to meet their duty to delineate a sufficiently narrow time frame for the alleged act," for although specific dates were provided, the People did not "specify a more precise time frame for the conduct at issue, or to demonstrate that they were unable to do so," 8 N.Y.3d at 539 (citing *People v. Morris*, 61 N.Y.2d 290, 295 (N.Y. 1984) ("On a motion to dismiss the indictment for failure to sufficiently detail when a crime allegedly occurred (*see* [N.Y. Crim. Proc. Law] 210.20, subd. 1), significant factors in considering sufficiency are the span of time set forth and the knowledge the People have or should have of the exact date or dates of the crime."). The New York State Court of Appeals, however, applied New York law to reverse the conviction in Sedlock's case. As Magistrate Judge Scott observed, the resolution in *People v. Sedlock* thus was a matter of New York state procedural law and not federal constitutional law, and it could not support Green's habeas claim concerning the indictment. Notably, the New York Court of Appeals declined in *Sedlock* to adopt a *per se* rule as to what constitutes an unreasonable time-frame for purpose of giving adequate notice in cases such as these.

directed at defense counsel's legal errors" that occurred in such prior proceedings.") (citing *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.") (quoting *Tollett*, 411 U.S. at 267) (alteration in original); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (declining to address the merits of an ineffective assistance of counsel claim that counsel failed to call certain witnesses at a pretrial suppression hearing because it occurred previous to Defendant's guilty plea); *Smith v. Burge*, No. 03 Civ.8648 RWS, 2005 WL 78583, at *7 (S.D.N.Y. Jan. 12, 2005) ("No hearing is required to resolve the factual issue of whether Smith was advised by his trial counsel of any defense arising under [certain case law] prior to entry of his guilty plea, as, even assuming that Smith was never so informed, it has not been established that he was denied effective assistance of counsel with regard to this aspect of his claim. First, Smith has waived any pre-plea ineffective assistance claim for the reasons set forth above; consequently, to the extent his argument concerns the purported failure of trial counsel to raise the so-called [legal] defense prior to his plea, his claim is not cognizable.").

Lear also faults trial counsel for failing to investigate an alleged alibi defense, thereby foreclosing an opportunity to prove petitioner's innocence. In particular, Lear asserts that trial counsel failed to investigate certain work records indicating petitioner was out of town on "many weekends" during the nine-month time frame of the indictment. He claims that these records conclusively established "that he wasn't in the area at the time of the alleged actions" and

therefore could not have committed the offenses charged. Lear reasons that had trial counsel known of these records, he would not have advised him to plead guilty but would have taken the case to trial.

In the context of challenging a guilty plea, the prejudice aspect of *Strickland* requires a defendant to show that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, , 474 U.S. 52, 58-59 (1985). The *Hill* court explained,

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068."

474 U.S. at 59-60; *see also Dorsey v.Kelly*, 112 F.3d 50 (2d Cir. 1997) (finding that trial counsel's failure to present potentially exonerating laboratory test reports to court would establish ineffective assistance if there was a reasonable probability that the lab reports would have caused the verdict after trial to be different).

Lear's claim regarding counsel's failure to investigate an alibi defense should be rejected because he has failed to demonstrate the required prejudice under *Hill v. Lockhart*. First, given

-16-

the nature of crimes on which Lear was indicted, the purported alibi evidence was not particularly

strong. With regard to the first victim, Lear was charged with a *course* of sexual conduct against a

child by committing sexual acts against his granddaughter on multiple occasions over a

nine-month time period. No particular date was given for any of the crimes; nor was one required

to be specified given the nature of the crime. Therefore, to constitute an actual alibi with regard to

the granddaughter, the travel records would have had to demonstrate that petitioner was out of

town for the whole time period alleged. However, in rejecting this claim as raised in petitioner's

C.P.L. § 440.10 motion, the trial court found that the proffered records did not substantiate such a

lengthy absence. The state court's findings that these work records were not conclusive is entitled

to the "presumption of correctness" and petitioner has demonstrated no evidence to rebut that

presumption. *See James v. Greiner*, 205 F.3d 1323, No. 99-2513, 2000 WL 233696, at *1 (2d

Cir. Feb. 16, 2000) (unpublished opn.) (affirming district court's denial of habeas petitioner's

claim that if his attorney had adequately performed an investigation of his alibi defense, he might

not have pleaded guilty to several counts of robbery and coercion in New York state court; finding

that petitioner "has not rebutted with clear and convincing evidence the presumption of

correctness [in 28 U.S.C. § 2254(e)(1)] that attaches to the state court's findings that his purported

alibis–the testimony of his girlfriend and employers and his employee time records–would not

establish that petitioner was elsewhere at the time the crimes to which he pleaded guilty were

committed").

      With regard to the second victim, Lear was charged with sexual abuse–another offense

which does not require an exact date and time period. The trial court concluded that although

petitioner's "work record would have served to cast some doubt on the statements of one of the

victims[,] . . . this evidence would not be such as would probably change the result of the trial and would be in the nature of impeachment evidence." Thus, Lear is incorrect to the extent that he claims that this purported alibi evidence necessarily amounts to exculpatory evidence. *E.g.*, *People v. Johnson*, 268 A.D.2d 891, 703 N.Y.S.2d 545, 546) (App. Div. 3d Dept. 2000) (holding that defendant's presentation of alibi defense with respect to numerous charges of sodomy, sexual abuse, and endangering the welfare of children did not render evidence insufficient to support his convictions, but merely created credibility issues for the jury to consider).

Given the circumstances present here, Lear has failed to demonstrate any reasonable probability or possibility that the outcome of his criminal proceeding would have been different but for trial counsel's alleged failure to adequately investigate an alibi defense, and therefore he cannot establish that he was prejudiced by counsel's omission. *See Hill v. Lockhart*, 474 U.S. at 58-59 ("[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

## V. Conclusion

For the foregoing reasons, I recommend that Lear's request for a writ of habeas corpus be denied and that the Petition (Docket #1) be dismissed. Furthermore, having considered the substance of the proposed new claims raised in Lear's Proposed Amended Petition, I recommend finding that they are not cognizable on federal habeas review and, therefore, amending the Petition to include them would be futile. Accordingly, I also recommend dismissal of the Motion to Amend (Dockt #12) with prejudice. Finally, I recommend finding that because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability should not issue as to any of petitioner's claims. *See* 28 U.S.C. § 2253(c)(2); *see*

also *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 20, 2010
      Buffalo, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

-20-

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 20, 2010
       Buffalo, New York